JACOB GUTHRIE V. CAPTAIN WILLIAM P. HALL.

[*Opinion Filed July 7, 1891.*]

*In the District Court of Kingfisher County, Okla-homa Territory, sitting with the powers and jurisdic-tion of the District and Circuit Courts of the United States.*

On July 2, 1891, at Guthrie, before Judge A. J. Seay, the supreme court of the Territory there sitting, Jacob Guthrie, who claimed to be a Cherokee citizen by blood, living and grazing cattle on the Cherokee Outlet, applied for an injunction, or restraining order, against Captain Hall, who was then in the outlet with his troops, carrying out the orders of the war department directing him to eject cattle which were in the outlet, in contravention of the proclamation of the president dated February 17, 1890.

The court on that day refused to grant the restraining order before argument. The case was argued July 3, 1891, and on July 6, 1891, the court rendered its oral opinion.

*Harper S. Cunningham*, for Plaintiff.

*Horace Speed*, for Defendant.

The following opinion was delivered by

SEAY, J.: The plaintiff states that he is a Cherokee Indian, and a citizen of the Cherokee Nation ; that said Nation is the owner, in fee simple, of what is known as the Cherokee Outlet, under the treaties of 1828, 1833, 1835, 1846, and the patent of 1838. That he now re-sides, and has resided for the last eight years, on a por-tion of said outlet with his family, and made permanent improvements thereon, and that he is now grazing three

thousand head of cattle on said outlet by virtue of a lease from said Nation.

Plaintiff further states that the defendant, being a United States soldeier, under orders from the war department, threatens, and is about to remove him and his cattle from said outlet, to his irreparable damage, etc., and asks a perpetual injunction to restrain the defendant from executing said orders.

Defendant answers admitting his orders, and that he is about to execute them, but denies that the Cherokee Nation ever had any other title to the "outlet west" than an easement and a use; that the treaties under which said nation claims title to said Cherokee Outlet provide that all the title conveyed thereby should revert to the United States in case the Cherokee Nation should become extinct, or abandon the use of said outlet; that said nation has long since abandoned said land; that the president issued his proclamation Feb. 17, 1890, ordering the removal of all intruders, and all cattle from said strip or outlet, and that this court has no jurisdiction to interfere by injunction, and asks that the bill of plaintiff be dismissed.

Under the treaties, laws of congress and patent, while the title to the said seven million acres of the home tract was a fee title, the title to the "perpetual outlet west" is a mere easement, a use, subject to forfeiture in case the Cherokee Nation becomes extinct or abandons the outlet. The west end of the "outlet west" having been closed by the purchase of all lands west thereof from Mexico, by the United States, and the east end of the "outlet west" having been effectually closed by the voluntary sale and conveyance by the Cherokee Nation, for cash, of more than two million acres (by permission and upon the approval of congress) to the Osage, Pawnee, and other tribes of Indians, it

has ceased to be an outlet to the west, or any outlet in any sense to any place. Its character has been changed and the object for which it has been granted has been defeated and totally destroyed by the voluntary acts of the Cherokee Nation. This constituted an abandonment of any title theretofore vested, and there is now no tract or parcel of land that answers to the description of "outlet to the west" as used in the patent to the Cherokee Nation.

The president of the United States, being the chief of the executive branch of the government, to whom is entrusted the duty by the constitution of seeing that the laws are faithfully executed, and whose power and authority are co-equal with, and independent of the judiciary in all duties imposed upon him by law which are of a political and executive character, will not be, in those matters, interferred with by injunction, and his proclamation in this case being executive and political, the courts have no jurisdiction in this case. The plaintiff failed to show that the damage would be irreparable without the interference of this court by injunction.

The injunction is therefore denied and the petition of the plaintiff dismissed.